Young, Justice, [*442] delivered the opinion of the court: (1) This was an action of replevin, commenced by Sinnott against Amos, in the Clinton circuit court, for the wrongful detention of a two horse wagon and harness. Amos, at the first term of the court to which the process was made returnable; moved the court to dismiss the suit for want of a declaration ; which motion was overruled, and the cause continued until the next term, at Sin-nott’s costs. At the next succeeding term, the plaintiff below filed his declaration in the usual form for a wrongful detainer, to which the defendant, Amos, by Ins counsel filed three several < pleas, to wit: first, non eepit; secondly, property in himself as defendant ; and thirdly, property in the plaintiff, as pledgor, and himself as pledgee, as follows: “ And for a further plea in this behalf, leave, etc., according, etc., the said defendant says actio. \ non, because he says that heretofore, to wit, on the 1st day of January, 1842, at the county aforesaid, the said plaintiff delivered the possession of the said goods and chattels to this defendant, as a pledge, to be kept and retained by this defendant until said plaintiff should pay to this defendant the sum of twenty-five dollars, which the said plaintiff has not as yet paid, or any part thereof, and this he is ready to verify. Wherefore he prays judgment, etc., and a return of the said goods, etc.” Issues of fact were joined upon the first and second pleas, and there was a demurrer to the third plea, which was sustained by the court. The cause was then tried by a jury, upon the issues of fact as aforesaid, and a verdict rendered for the plaintiff, Sin-nott, on both of said issues. . It appears, by the bill of exceptions, which is made a part of the record in the cause, that on the trial before the jury, the plaintiff, Sinnott, introduced one Maxcy as a witness, who testified, that as sheriff of Clinton county, he found the property mentioned in the declaration in the possession of the defendant, Amos, and replev-ied the same out of his hands. He thereupon rested his case without further testimony. The defendant, Amos, by his counsel, then moved the court for a non-suit, for the reason that the evidence on the part of the plaintiff was insufficient to support the action. This motion was overruled, and an exception taken to the opinion of the court thereon. The defendant, Amos, then introduced one Coats as a -witness, who testified that the plaintiff, Sinnott, admitted to him, that he had left the said property with the defendant, to be kept as security, until he paid' the defendant $23 or $25, which he owed to the said defendant; and that the property was to be the defendant’s until said money was paid; that Amos was to take good care of it, and not loan it out. He next introduced one Kelly, who testified that before the commencement of the suit, [* 443] he applied to the plaintiff, Sinnott, to borrow said wagon, and that Sinnott told him he had delivered the same to the defendant, to be kept by him until he was paid by the plaintiff the sum of $25, or thereabouts; but if the defendant was willing, he could have the wagon. That he then borrowed the wagon from the defendant, and knew that he had also lent it to others. He then called one Seagraves, who testified that the defendant Amos, had paid a debt of $35 to him for the plaintiff, upon a judgment lie had against the plaintiff, upon which an execution had been issued, and levied upon the property in question; and lastly he intrpduced one Potts, who testified that he was the constable who levied Seagraves’ execution upon the property replevied. The plaintiff, Sinnott, then called one Gullick, as a witness, who testified that the defendant Amos, was indebted to him in the sum of $29, on two notes; that he wanted to procure a mason to do some work for him, and while engaged in seeking one, he fell in with the defendant, Amos, who told him that the plaintiff, Sin-nott, was a good workman, and that Sinnott owed him $23.50, for which he held his wagon in pledge, and that if witness would get Sinnott to do his work, they could make a turn; that Sinnott could do witness’ work, and that witness could then take up Sinnott’s debt or note, in part payment of the amount which he, Amos, owed to witness. Witness further testified that he agreed to this arrangement, and went and saw Sinnott, who also agreed to it; and that, in pursuance of this understanding, Sinnott performed work for him, as a mason or plasterer, enough or more than was necessary to pay his debt to Amos. That witness then called upon Amos with his notes and money to pay the balance, for the purpose of lifting Sinnott’s note, which the defendant, Amos, refused to do. Witness said that he understood this was the same debt for which the wagon was pledged, and that he afterward paid Sinnott for his work. The plaintiff, Sinnott, then proposed, in the further progress of the trial, to introduce one Bankson as a witness, who was his surety in the replevin bond, and who was objected to by Amos, on the ground of his interest in the event of the suit. Whereupon, on motion of Sinnott’s .counsel, the name of Bankson was stricken out of the replevin bond, and one Robert Woodward substituted as surety in his place; and the said Bankson was then permitted to testify; to which decision of the court, the defendant Amos, also excepted. The testimony of. Bankson is not preserved by the bill of exceptions ; and the foregoing is stated as all the evidence offered on the trial of the cause. The defendant, Amos, by his counsel, then moved the court for the following instructions to the juiy, to wit: [* 444] 1. That unless it appears from the evidence, that the defendant, Amos, took the wagon and harness mentioned in the declaration, against the consent of the plaintiff, Sinnott, that they must find for the defendant. 2. That if the jury should believe; from the evidence, that the property was delivered voluntarily by the plaintiff, Sinnott, to the defendant, Amos, and not unlawfully or wrongfully taken by the defendant, they must find the first issue for the defendant. These instructions the epurt refused to give, but on the contrary instructed ‘the jury, that the finding of the property in the possession of the defendant, Amos, was presumptive evidence, under the plea of non cepit, that he had taken the same from the plaintiff. To this instruction of the court, as well as for the refusal to give the instructions above mentioned, an exception was also taken by the defendant. The jury found both issues for the plaintiff. Whereupon the defendant, by his counsel, moved the court to set aside the verdict, and grant a new trial, for the following reasons, to wit: first the court gave improper instructions to the jury; secondly, the court refused to give proper instructions to the jury ; and thirdly, the finding of the jury is contrary to the law and to the evidence; which motion was overruled by the court, and a judgment rendered in favor of the plaintiff, Sinnott, for his costs. To which last decision of the court, in overruling the defendant’s motion for a new trial, an exception was likewise taken. The following are assigned as causes of error, in this court, to wit: 1. The court below erred in sustaining the plaintiff’s demurrer to the defendant’s third plea ; 2. The court erred in refusing to dismiss the suit, at the first term, for the reason that no declaration had been filed by the plaintiff; 3. The court erred in refusing to instruct the jury as in case of a non-suit. 4. The court erred in permitting improper evidence to go to the jury, and in permitting Bankson, the surety in the replevin bond, to testify as a witness for the plaintiff; 5. The court erred in refusing to permit proper evidence to go to the jury; 8. The court erred in refusing to give the instructions to the jury, which were asked for by the defendant; and, 7. The court erred in overruling the defendant’s motion fora new trial. The first error assigned relates to the sufficiency of the defendant’s third plea, in this form of action. The statute of 1839, which is supplemental to the act of 1827,, on the subject of the action of replevin, declares, “That whenever any goods or chattels shall have been wrongfully distrained, or otherwise wrongfully taken, or shall be wrongfully detained, an ac- [* 445] tion of replevin maybe brought for the recovery thereof, by the owner or person entitled to the possession thereof.” This statute enlarges the common law remedy, as well as the remedy given by the act of 1827, and extends it to a wrongful detention only; and the declaration in this case properly conforms to the extended character of the remedy. The wrongful detention, nud not the unlawful taking, is therefore the gist of the action, In the action of replevin at common law, and by the statute of 1827, the gist of the action consists in the tortious taking of the plaintiff’s goods by the defendant; and that fact is put in issue by the general issue plea of non cepit. But when the present form of action is adopted, the general issue is non detinet; and the plea of non cepit, being inapplicable, would be declared bad, upon demurrer, or might be stricken out, or disregarded, at the plaintiff’s election, as presenting an immaterial issue.- 4 Blackf. 804.. There is also this difference between these two modes of de-fence, when properly pleaded, in the action of replevin. Non cepit puts in issue the unlawful taking, and the place where taken, when material; while under the plea,of non detinet, the plaintiff' must prove, not only the wrongful detention of the goods, but also his right to the immediate possession. The reason why the place where the goods are distrained is deemed essential, in the English courts, is chiefly because the right to distrain for rent is generally restricted to the limits of the demised premises. But it has been frequently decided in that country, that a plea of cepit in alio loco, in the same county, was not material or issuable, for property taken otherwise than by distress, anymore than the like plea would have been good, had the form of the action been trespass, instead of replevin. In the case of Lougee et al. v. Colton & Co. 9 Dana 123, the goods were alleged, in the declaration, to have been taken from a designated house in the city of Louisville. The parties sued traversed the taking as alleged, and averred that they were taken from a different house in the same city: Meld, upon demurrer, that the plea was bad, for the reason, that the locus in quo was nob material. Besides the plea of non detinet, the defendant may also plead property in himself, or in a stranger, or in the plaintiff and himself, as bailor and bailee, or that he took the cattle damage fea-sant, or the goods for tolls, customs, or services, as well as for many other causes, and may have a return until his demands are satisfied. Baker et al. v. Fales, 16 Mass. 155. In Townsend’s Tables (Abatement 3), it is said to be a good plea in replevin, that the goods were bailed to the defendant, for which detinue lies at common law, and not replevin-; and the books of pleading give the form of such a plea. Rastell's Entries 569; [*446] Coyne’s Dig. Plead. (3 K. 12), Replevin A. The third plea in this case, and to which a demurrer was sustained, is such a plea, and in my opinion, sets up a valid defence to the action. It may nevertheless be asked, why ipsist upon this third plea, if the same facts could have been, or were permitted to he given in evidence under the second of property generally in the defendant? The question might well be retorted upon the plaintiff, by asking in reply, wherein consists the reason for objecting to it ? The twelfth section of the practice act declares, “ That the defendant may plead as many matters of fact, in several pleas, as he may deem necessary for his defence, or may plead the general issue, and give notice under it of the special matters relied on for his defence.” The defendant has done nothing more than avail himself of this privilege, by pleading property generally in himself, at the same time in a separate plea, a qualified right to the possession as the pledgee of the plaintiff; and although it may be true, that the same matters could he given in evidence under the second plea, still I am of opinion that the defendant has adopted the better mode of pleading, by setting out in a third plea the special character of his claim to the possession of the property. It is very certain that the plaintiff can have no just cause of complaint, for being thus more fully advised by his opponent, of the whole defence he has to meet. In this view of the question, I have no hesitation in deciding that the demurrer to the defendant’s third plea should have been overruled. It is assigned for error in the second place, that the court refused to dismiss the suit, for want of a declaration at the first term. The mode of instituting a suit in replevin, under our statute, is first, for the plaintiff to make oath, usually in the form of an affidavit, of the nature of his complaint against the defendant; secondly, for the clerk to issue a writ of replevin, directed to the sheriff of the county, which is made up of the plaint and summons mentioned in the second section of the replevin act of 1827, by setting out the substance of the affidavit, by way of plaint or complaint, in the commencement of the writ, and then by concluding with a summons to the defendant, etc.; and thirdly, by the filing of the declaration. The action in this case was commenced in all respects in conformity with the provisions of our statutes. No declaration having been filed at the first term, to ' which the writ was made returnable, the cause was properly continued at the plaintiff’s costs, under the sixth section of the practice act, until the next succeeding term; but the want of such declaration, at the first term, was no cause for the dismissal of the suit. The third error assigned in the cause arises out of the refusal of the court to instruct the jury as in case of a non-suit. The bill of exceptions shows, that at this stage of the proceedings, the plaintiff had rested his case, by simply [* 447 ] proving by Maxcy, the sheriff, who was charged with the execution of the writ, that he found the property mentioned in the declaration, when he went to replevy it, in the possession of the defendant. If the general issue plea of non detinet had been pleaded by the defendant, with his other pleas this evidence would not have sustained the issue, which would have been made by that plea, on the part of the plaintiff; as he could not have shown a wrongful detention of the wagon and harness by the defendant without proving, at the same time, his own right to the immediate possession ; and if proper instructions had been given to the jury, under such circumstances, he must have failed in his action. As it is, the plea of non eepit presented an immaterial issue, from which no advantage in the course of the trial, after issue had been joined upon it, could result to either party. The only plea, therefore, to which this evidence could have legally referred, in the absence of the plea of non detinet, was the second plea, of property in the defendant, by which the burthen of proof was thus, by his own act, thrown upon the defendant himself, and not upon the plaintiff. In the action of replevin, the defendant, by his avowry, may become an actor, as well as the plaintiff, and thereby take upon himself, as in this case, the onus of proving his special plea of property in himself, or of failing in his defence. Whitesides v. Collier, 7 Dana 285. Neither do I think the motion at all appropriate for the purpose intended by it, even if the plea of non cepit had been proper in a case like this. By the motion, as submitted, the court is requested to instruct the jury as in case of a non-suit. The plaintiff may voluntarily suffer a non-suit, according to the eighteenth section of the practice act, at any time before the jury retires from the bar to consider of their verdict; but I know of no authority in the court, to instruct the jury, either to non-suit the plaintiff, or to find against him as in a ease of a no.n-suit, when there is no evidence proving or tending to prove the issues on the part of the plaintiff. The proper motion seems to he to request the-court to instruct the jury, that-it is their duty, according to law, in the absence of such testimony, to find a verdict for the defendant, The verdict in such a case would be final and conclusive upon the plaintiff, as to the matters put in issue by the pleadings, and by no means analogous to a non-suit, where the plaintiff would be at liberty to commence his action de novo. The only way a plain tiff can avoid the effect of such a judgment, is by suffering a non-suit before the jury retires from the bar. The motion, therefore, being inapplicable to the real issue before the jury, the instruction asked for was very properly refused. 4 Blackf. 469. The fourth assignment of error relates to the testimony of Bankson, the plaintiff’s surety in the replevin bond, who [*448] was discharged from liability as such surety, at the trial, and permitted to testify as a witness. It appears from the bill of exceptions, that during the progress of the trial before the jury, the plaintiff introduced Bankson as a witness, and that he was’ objected to by the defendant, as interested in the event of the suit; that the plaintiff then moved for leave to strike out the name of Bankson from the replevin bond, and to substitute one Robert Woodward, as his surety, which was permitted by the court, and Bankson allowed to testify. It does not appear, however, that Bankson gave any testimony whatever; or if he did, it has been nowhere preserved in the record. Be that as it may, I can perceive no error in this portion of the proceedings, it being the constant practice of the courts, thus to restore the competency of of a witness whenever his testimony'may become material at the trial. Buller, J., said, in all such cases, if the defendant wishes to examine his'bail, the court will either allow his name to be stricken out, on the defendants’ adding and justifying another person as bail; or even at the trial, will permit it to be stricken out of the bail piece, upon the defendants’ depositing a sufficient sum with the proper officer. Lacon v. Higgins, 3 Starkie 132; 1 Term R. 164; 1 Tidd’s Pract. 259; and in the like manner the surety in a replevin bond may be rendered a competent witness for the plaintiff. Bailey v. Bailey, 1 Bing. 92; and só of the endorser of a writ, who thereby becomes surety for the payment of the costs. Roberts v. Adams, 9 Greenl. 9; 13 Pick. 79; 15 Pick. 51-53; Greenleaf’s Ev. 436, note 1. The fifth and sixth assignments of error relate generally to the refusal of the court to permit proper evidence to go to the jury, and for refusing to give the instructions which were requested by the defendant. The instructions asked for by the defendant, I think were properly denied by the court. They are such instructions as would be relevant and proper, if the action had been for a tortious taking, but not in a case like the one under consideration. In the case of Linville v. Earlywine, 4 Blackf. 469, it is said, “If an instruction to the jury be refused, and the record does not show its applicability to the case, it must be presumed to have been irrelevant and correctly refused.” In this action no taking is required to be proved; all that the plaintiff was bound to show by his testimony to entitle him to recover, admitting the plea of non detinet had been pleaded, was his right to the possession of the property, and a wrongful detention by the defendant. The instruction given by the court was nevertheless erroneous, and well calculated to mislead the jury; and the defendant ought not to be prejudiced by any general finding in connexion with the plea of non cepit, which has already been determined to present merely an immaterial issue. Possession of the goods by the defendant will not of itself raise the legal presump- [*449] tion of an unlawful taking without also showing a wrongful detention by a demand and refusal to deliver. For non constat the defendant may have acquired the possession lawfully, as by bailment and the like, and in this respect the action of replevin is analogous to that of trover. The seventh and last error assigned arises out of the overruling of the defendant’s motion for a new trial. The evidence shows that the wagon and harness were pledged to the defendant, Amos, by the plaintiff, Sinnott, to secure the payment of $23.50, and that they were to be kept by the defendant as security until the debt was paid. That subsequently the defendant told one Gullick, to whom he was indebted in the sum of $29, that if he, Gullick, would procure the plaintiff, Sinnott, to perform some mason work for him, Gullick, that they could make a turn by which Gullick could settle the plaintiff’s debt of $23.50 with him in exchange for his own debt to Gullick. That the work was accordingly performed for Gullick by Sinnott; and that Gullick then called on the defendant, Amos, in pursuance of said understanding, and offered him his own notes and money sufficient to satisfy the residue of Sinnott’s debt, which the defendant, Amos, then refused to accept; and that Gullick after-wards paid the plaintiff, Sinnott, for his work. This evidence shows that the wagon and harness in contfo-versy was in the possession of the defendant, Amos, rightfully, and pledged to secure the payment of a debt which appears still to be unsatisfied; and although Amos, it seems, acted in bad faith in refusing to perform his agreement with Gullick, still the debt has not been paid. Nor is it necessary to consider whether Sin-nott, under the circumstances, could have legally compelled Amos to liquidate the amount of his debt by making the turn with Gullick. Whatever his right may have been in this respect it was subsequently waived by his receiving payment from Gul-lick for his work. Upon the whole, I think the defendant was entitled to a new trial. The judgment of the court below is. reversed, at the costs of the defendant in error, and the cause remanded for further proceedings consistent with this opinion. Thomas, Justice, did not hear the argument in this cause and gave no opinion.